SO ORDERED: August 20, 2009.



**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DOWNEY CREATIONS, LLC, | ) | Case No. 08-09691-JKC-11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| FRENCH DESIGN JEWELRY, INC., | ) | |
| DISONS GEMS, INC., WEAR THE PASSION, | ) | |
| INC., J.I.I.C., INC., d/b/a SOUTH AMERICAN | ) | |
| IMPORTS, LEVINE DESIGN, INC., INDIGO | ) | |
| JEWELRY, INC., CHATHAM CREATED | ) | |
| GEMS, INC., and CLASSIC COLORS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 08-50533 |
| | ) | |
| DOWNEY CREATIONS, LLC., and | ) | |
| REGIONS BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DOWNEY CREATIONS,
LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter comes before the Court on Defendant Downey Creations, LLC's ("Downey")

Motion for Partial Summary Judgment (the "Motion") against Plaintiffs French Design Jewelry, Inc., Disons Gems, Inc., Wear the Passion, Inc., J.I.I.C., Inc. d/b/a South American Imports, Levine Design, Inc., Indigo Jewelry, Inc., Chatham Created Gems, Inc., and Classic Colors, Inc. (collectively, the "Plaintiffs") on their Complaint to Recover Certain Property in Possession of the Debtor and Any Money Generated from the Sale Thereof (the "Complaint") against Downey and Regions Bank, N.A. ("Regions").  Having reviewed the parties' respective briefs and submissions, the Court issues the following Findings of Fact and Conclusions of Law and grants Downey's Motion except as it relates to Disons Gems, Inc. and J.I.I.C., Inc. d/b/a South American Imports.

## Procedural History

On August 11, 2008, the Plaintiffs filed an involuntary Chapter 7 petition against Downey. On September 29, 2008, Downey filed its Consent to Entry of Order for Relief, along with a Motion to Convert Involuntary Chapter 7 Case to One Under Chapter 11 of the Bankruptcy Code.  On September 30, 2008, the Court entered an Order for Relief and converted the case to Chapter 11. On October 2, 2008, the Plaintiffs sought relief from the automatic stay to recover certain goods that they had delivered to Downey pre-petition "on memorandum" pursuant to what they alleged were common law bailments.  In discussing the various matters heard by the Court on October 2, 2009, Downey and Regions outlined their response to the Plaintiffs' stay motion, arguing that the subject transactions were "consignments" under Revised Article 9 of the Uniform Commercial Code (the "U.C.C.") and that the Plaintiffs' failure to file financing statements rendered their interests in the subject goods subordinate to Regions' blanket lien.

Based on the parties' articulation of their dispute and pursuant to Federal Rule of Bankruptcy Procedure Rule 7001(2), the Court instructed them to raise the issue presented by the stay motion

via an adversary proceeding. On October 8, 2009, the Plaintiffs filed their Complaint against Downey and Regions in compliance with the Court's instruction. The Complaint essentially asserts a claim for replevin for the goods the Plaintiffs delivered to Downey. Downey asserts on summary judgment that the Plaintiffs' interests in the subject goods are unperfected and, thus, avoidable under 11 U.S.C. § 544(a)(1).[1]

## Findings of Fact

Downey is a limited liability company organized and existing under the laws of Indiana. Downey buys and sells diamonds and colored stones, mountings, semi-mountings, and finished goods. Through contractual agreements with retail jewelers, Downey conducts special event trunk shows, selling goods to the retailers' customers and invoicing the retailer for the wholesale cost of the goods sold. With the exception of Levine Design, Inc., the Plaintiffs directly delivered goods to Downey to be sold to Downey's customers at these trunk shows (the "Contested Transactions"). As explained below, the nature of the Contested Transactions is in dispute.

On May 1, 2006, to secure its obligations under a Promissory Note dated May 1, 2006, in the amount of $4,000,000.00 given by Downey to Regions, Downey granted Regions a security interest in substantially all of Downey's assets, including all then-owned and after-acquired inventory and the proceeds therefrom. On June 14, 2006, Regions filed U.C.C. financing statement

---

[1] Section 544 of the Code provides in relevant part:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time, and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists . . . .

3

number 200600005725168 with the Indiana Secretary of State against Downey, thereby perfecting a security interest in substantially all of Downey's assets.

All but two of the Plaintiffs did not file financing statements with respect to the Contested Transactions. The two that did–Disons Gems, Inc. ("Disons Gems") and J.I.I.C., Inc., d/b/a South American Imports ("SAI")–filed financing statements, but only after Regions' filed its financing statement.

## Conclusions of Law

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325, 106 S.Ct. at 2554. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the nonmovant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324, 106 S.Ct. at 2553. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-87 (1986)).

This case turns on whether the Contested Transactions are "consignments" for purposes of

4

Indiana Code § 26-1-9.1-102(a)(20), hereinafter referred to as § 9-102(a)(20).[2] Both Downey and the Plaintiffs agree that in order to settle this dispute on summary judgment, the Court must first determine which party bears the burden of proof under § 9-102(a)(20) of the U.C.C.. The Court agrees.

> Section § 9-102(a)(20) provides:
>
> "Consignment." A transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and all of the following apply:
> (A) The merchant:
> (i) deals in goods of that kind under a name other than the name of the person making delivery;
> (ii) is not an auctioneer; and
> (iii) is not generally known by its creditors to be substantially engaged in selling the goods of others.
> (B) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;
> (C) the goods are not consumer goods immediately before delivery; and
> (D) the transaction does not create a security interest that secures an obligation.

Section 1-201(37) of the U.C.C. further states that any consignment–as that term is defined above–is a "security interest." Accordingly, to protect their security interests from competing claims and from avoidance under 11 U.S.C. § 544(a)(1), consignors must perfect them like any other security interest. *See* U.C.C. § 9-317.

As indicated above, to determine whether the Contested Transactions meet § 9-102(a)(20)'s definition of "consignment," the Court must first determine who bears the burden of proving its applicability. The parties agree that the only element of the definition at issue on summary judgment is § 9-102(a)(20)(A)(iii), i.e., whether Downey is "generally known by its creditors to be

---

[2] Like many other states, Indiana has adopted the Uniform Commercial Code, including Revised Articles 2 and 9. For ease of reference and comparison to other states that have adopted the U.C.C., the Court will cite relevant sections of Article 2 and 9 of the U.C.C. by their uniform citations, which correspond to the sections of Article 26 of the Indiana Code. For example, § 9-102(a)(20) of the U.C.C. corresponds to Indiana Code § 26-1-9.1-102(a)(20).

5

substantially engaged in selling the goods of others."

With respect to that issue, Downey argues:

> Each element [of § 9-102(a)(20)] must be satisfied, "and the burden of proof with respect to each attribute falls on the party to be protected by this section." In re Morgansen's Ltd., 302 B.R. 784, 787 (Bankr.E.D.N.Y.2003) . . . . In this case, by commencing this adversary proceeding and specifically alleging that the transactions at issue are common law bailments and that Article 9 does not apply, the burden rests with the [Plaintiffs] to prove that this case is not governed by Article 9. In re G.S. Distribution, Inc., 331 B.R. 552 (Bankr.S.D.N.Y.2005) (on debtor's motion to engage in private sale of jewelry provided on consignment basis, debtor carried burden of proving applicability of Article 9); Morgansen's, 302 B.R. at 787 . . . (debtor carried burden of proving applicability of Article 9 on its motion to sell consigned goods at auction); In re Valley Media, Inc., 279 B.R. 105 (Bankr.D.Del.2002) (on debtor's motion to sell consignment inventory at auction, debtor carried burden of proving applicability of Article 9). . . .

*Brief of Defendant Downey Creations, LLC in Support of Motion for Partial Summary Judgment* at 23. In other words, Downey insists that the Plaintiffs, *as plaintiffs*, bear the burden of proof. The Plaintiffs also direct the Court to *Morgensen's* and *G.S. Distribution,* but for the proposition that the burden of proof under § 9-102(a)(20) rests on the party invoking its protection. In this proceeding, that party is Downey, sitting in the shoes of a hypothetical lien creditor pursuant to 11 U.S.C. § 544(a)(1). As explained below, the Court finds the logic of both parties, and the cases they cite, to be flawed.

The court in *Morgensen's* was presented with the Chapter 11 debtor's motion to conduct an auction sale of its inventory over the objections of several consignors. In applying § 9-102(a)(20), the court stated that "the burden of proof with respect to each attribute [of § 9-102(a)(20)] falls on the party claiming to be protected by this section." *Morgensen's*, 302 B.R. at 787. The court further notes that "'the purpose of . . . § 9-102(a)(20) and 9-319(a) is to protect general creditors of the consignee from claims of consignors that have undisclosed consignment arrangements with the

6

consignee that create secret liens on the inventory.'" *Id*. at 787 n.4 (quoting *In re Valley Media, Inc.*, 279 B.R. 105, 121 (Bankr.D.Del.2002)). Following this logic, the party claiming protection under § 9-102(a)(20) in *Morgensen's* appears to be the debtor, acting on behalf of the estate's creditors. However, in granting the debtor's sale motion, the court proceeded to actually place the burden on the consignors to prove that the transactions in question did not meet Revised Article 9's definition of "consignment." *Id*. at 788 ("Under section (A)(iii), none of the objecting consignors put on any proof that the debtor 'was not generally known by its creditors to be substantially engaged in selling the goods of others.'").

The court in *G.S. Distribution* was also presented with a request by the debtor to sell certain inventory pursuant to 11 U.S.C. § 363. *G.S. Distribution*, 331 B.R. at 555. By way of motions to dismiss and for stay relief, the manufacturer of that inventory objected to the sale. *Id*. As here, the debtor argued that the manufacturer's failure to file a financing statement was fatal to its motions pursuant to § 9-102(a)(20). Citing *Morgensen's*, the court held that "the burden of proof falls on the party claiming applicability of the section." *Id*. at 561. Consistent with that, the court further stated that "[t]he Debtor has the burden of proof because it asserts that the transfer of jewelry was a consignment under § 9-102(a)(20)." *Id*. Unfortunately, for this Court's purposes, the *G.S. Distribution* court does not acknowledge the fact that *Morgensen's* statement regarding the burden of proof and its actual holding are at odds with one another.

As confusing as *Morgensen's* and *G.S. Distribution* arguably are, the Court categorically disagrees with Downey's contention that they stand for the proposition that movant/plaintiff in a dispute involving § 9-102(a)(20) necessarily bears the burden of proof. Neither case supports that argument, and the Court simply does not understand why Downey contends that they do. More

importantly, such an approach–given the various postures in which an issue under § 9-102(a)(20)could be presented–is simply too arbitrary and does little to serve the actual purpose of the provision.[3]  Thus, the Court rejects Downey's argument that the Plaintiff, *as plaintiffs*, bear the burden of proof under § 9-102(a)(20)(A)(iii).

The Court must also reject the Plaintiffs' argument that the burden of proof rests on the party seeking the protection of § 9-102(a)(20).  As indicated above, *Morgensen's* and *G.S. Distribution* are not particularly clear on this point.  Even assuming that the cases, taken together, support the Plaintiffs' position, neither case explains its reasoning or provides a basis–statutory or otherwise–for its approach.  In the Court's opinion, placing the burden on the party seeking the protection of § 9-102(a)(20) also does little to serve the underlying purpose of the provision.  As explained below, the Court finds that it makes much more sense to place the burden on the party who bears the risk under § 9-102(a)(20), i.e., the consignor.

To support that logic, the Court looks first to former § 2-326 of the U.C.C, which provided in relevant part:

> (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is . . . (b) A "sale or return" if the goods are delivered primarily for resale.
> (2) Except as provided in subdivision (3) . . . goods held on sale or return are subject to [the claims of the buyer's creditors while in the buyer's possession.]
> (3) Where the goods are delivered to a person for sale and the person maintains a place of business at which he or she deals in goods of the kind involved, under a name other than the name of the person making the delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return.  The provisions of this subdivision are applicable even though an agreement purports to reserve title to the person making delivery until payment or

---

[3] As both *Morgensen's* and *G.S. Distribution* suggest, an issue under § 9-102(a)(20) could arise through a motion to sell and objection thereto.  It could also arise in an avoidance action under § 544(a)(1),in a relief from stay motion, an action for replevin or conversion or in a lien dispute between the consignor and other lien holders.

8

> resale or uses such words as "on consignment" or on "memorandum". *However this subdivision is not applicable if the person making the delivery does any of the following:*
> *(b) Establishes that the person conducting the business is generally known by his or her creditors to be substantially engaged in selling the goods of others.*

(italics added). While § 9-102(a)(20) does not explicitly assign the burden of proof as former § 2-326 did, the purpose behind the provision suggests to the Court that the burden nevertheless remains on the consignor. In their treatise on the Uniform Commercial Code, White and Summers explain:

> The definition [of "consignment" in Revised U.C.C. § 9-102(a)(20)] incorporates most of the conditions of former 2-326. In a second important definitional change, section 1-201(37) states that any consignment (as that term is defined in 9-102(a)) is a "security interest." This means that all consignors not explicitly excluded by the definition in 9-102(a)(20) hold security interests that are subject to subordination by lien creditors and others under 9-317 if their interests are unperfected. *To protect their interests, consignors will have to perfect them like any other security interest. The combination of 9-102(a)(20) and 1-201(37) has moved almost all commercial consignments into Article 9–at least for most purposes.*

4 WHITE AND SUMMERS, UNIFORM COMMERCIAL CODE § 30-4 (5th ed) (italics added). As explained in the passage from *Valley Media*,[4] quoted above in the Court's discussion of *Morgensen's*, the

---

[4] Both Downey and the Plaintiffs rely on *Valley Media* to support their respective positions. Downey cites the opinion for the proposition that "on debtor's motion to sell consignment inventory at auction, debtor carried burden of proving applicability of Article 9." *Brief of Defendant Downey Creations, LLC in Support of Motion for Partial Summary Judgment* at 23. Plaintiffs, in turn, cites to part of a footnote which, in its entirety, reads:
> Under former U.C.C. § 2-326(3) it is clear that the Objecting Vendors have the burden of establishing the Generally Known/Substantially Engage test has been met to rebut the presumption that the consignment was a "sale or return" arrangement. However, under revised U.C.C. § 9-102(a)(20) the party seeking to avoid the consignor's interest must first prove that the arrangement at issue is indeed a consignment by showing that the deliveree was a merchant. Thus, under revised U.C.C. § 9-102(a)(20), it seems that the burden would be on the Debtor to demonstrate that Valley was *not* generally known by its creditors to be substantially engaged in the selling of the goods of others. . . . The Debtor in Possession has met this burden. I am satisfied, therefore, that the outcome remains the same under either provision.

*Valley Media*, B.R. 279 at 131 n.54; *Brief in Opposition to Defendant Downey Creations, LLC's Motion for Partial Summary Judgment* at 14.

Contrary to Downey's reading of the case, the court repeatedly placed the burden on the vendors in ruling on the debtor's motion to sell over the vendor's objection. *See, e.g., Valley Media*, 279 B.R. at 131

9

purpose of former U.C.C. § 2-326(d) and now revised U.C.C. §§ 9-102(a)(20) and 9-319(a) is to protect general creditors of the consignee from secret liens in the consignee's inventory. *Valley Media*, 279 B.R. at 125. The court's opinion in *In re Truck Accessories Distributing, Inc.*, 238 B.R. 444, 448 (Bankr.E.D.Ark.1999), is also instructive:

> The basis for this hostility to consignment arrangements . . . is fairly obvious. Regardless of the legal theory of the consignment, in practical operation it looks like a sales transaction in which the unpaid seller retains a secret lien in his goods. From a creditor's point of view, the consigned goods appear to be part of the regular inventory of the consignee which, therefore, ought to be subject to their claims. What is more . . . there is no public filing or other notoriety respecting the consignment to warn the creditors that the consignor may have rights in the goods which are superior to others.

With these concerns in mind, it makes little sense to place the burden of proving § 9-102(a)(20) on a consignee's creditors (or, as in this case, a debtor in possession sitting in the shoes of a hypothetical lien creditor by virtue of 11 U.S.C. § 544(a)(1)). As between a consignee's creditors and the consignor, only the consignor is in a position to determine whether its transaction with the consignee falls under the U.C.C.'s definition of "consignment" and to file a financing statement to perfect its interest if it does. It stands to reason, then, that if a consignor chooses not to file a financing statement, it must then bear the burden of proving that the transaction is not

---

("Therefore, the burden on the Objecting Vendors was to establish that Valley was generally known by Valley's creditors to be substantially engaged in selling the goods of others.").

  As indicated in the footnote cited by the Plaintiffs, the court did offer the caveat quoted above that the burden of proof shifted from the consignor under former § 2-326 to the "party seeking to avoid the consignor's interest" under § 9-102(a)(2). That statement, however, is perplexing. The text of the statute itself does not support that conclusion. In fact, if anything, the California version of § 9-102(a)(20) that is at issue in the case suggests that the burden is on the consignee in that the statute provides that a transaction is a consignment if "*the merchant* satisfies all of the following conditions." *Id*. at 123 n. 23 (quoting Ann. Cal. Com Code § 9102(a)(20) (italics added)). Furthermore, the *Valley Media* court failed to identify what evidence the debtor in possession even presented, leaving this Court to wonder how it concluded that the debtor had satisfied its burden of proof. Furthermore, the statement is at odds with other statements in the opinion, like the one quoted above, that plainly placed the burden on the Objecting Vendors.

  In summary, while *Valley Media* is instructive in some respects, in others it is confusing at best.

subject to Article 9 if and when a dispute arises. In the Court's opinion, placing the burden of proof on the consignor provides some incentive for the consignor to file a U.C.C. financing statement to protect its interest simply out of an abundance of caution. That, in turn, not only discourages "secret liens," but also provides more predictability, thereby reducing the need for costly litigation such as the case at hand.

Accordingly, the Court must conclude that the burden of proof rests with the Plaintiffs to ultimately prove that Downey's creditors generally knew that Downey was substantially engaged in selling the goods of others.[5] To satisfy the "generally known" element of § 9-102(a)(20), the Plaintiffs must prove that a majority of Downey's creditors were aware that Downey was substantially engaged in selling the goods of others. *See Valley Media*, 279 B.R. at 125 (citing *In re BRI Corp.*, 88 B.R. 71, 75 (Bankr.E.D.Pa.1988)). That majority is determined by the number of creditors, not by the amount of creditors' claims. *Id*. (citing *Quaker City Ironworks, Inc. v. Gatz (In re Wicaco Mach. Corp.*), 49 B.R. 340, 344 (D.C.Pa.1994); *BRI*, 88 B.R. at 75; and *Multibank Nat'l of W.Mass, N.A. v. State St. Auto Sales, Inc. (In re State St. Auto Sales, Inc.)*, 81 B.R. 215, 218 (Bankr.D.Mass.1988)). Testimony as to general knowledge in the industry is insufficient to prove knowledge by a majority of creditors. *Id*. (citing *Heller Financial, Inc. v. Samuel Schick, Inc. (In re Wedlo Holdings, Inc.)*, 248 B.R. 336, 341-42 (Bankr.N.D.Ill.2000)).

In its response to Downey's summary judgment motion, the Plaintiffs contend that fifty of Downey's creditors knew that Downey was substantially engaged in selling the goods of others. *Brief in Opposition to Defendant Downey Creations, LLC's Motion for Partial Summary Judgment*

---

[5] For summary judgment purposes, of course, the Plaintiffs must merely establish that a genuine issue of material fact exists as to whether Downey's creditors generally knew that Downey was substantially engaged in selling the goods of others.

11

at 18. As support for that contention, the Plaintiffs direct the Court to David Downey's deposition testimony wherein he identified 19 creditors (including the Plaintiffs themselves)[6] that delivered goods "on memorandum" and "therefore knew that Downey Creations sold the goods of others." *Id.* The Plaintiffs also list four creditors that Downey described as "Unsecured Consignors" in their "First Day Motions," as well as an 20 additional creditors that filed U.C.C. financing statements with respect to goods that were either sold to Downey or delivered on consignment, arguing that the "Court may infer that these entities knew that Downey Creations was substantially engaged in selling the goods of others." *Id.* at 18-19. The Plaintiffs further urge the Court to infer Regions' knowledge based on the fact that when Regions filed its U.C.C. financing statement, three other consignors had already filed U.C.C. financing statements. *Id.* at 19-20.

The Plaintiffs maintain that several of Downey's insiders–Alan Heritier, Meir Alon and David G. Downey–presumably knew that Downey was substantially engaged in selling the goods of others. They also argue that three creditors, simply by virtue of being in the jewelry business, knew Downey was substantially engaged in selling the goods of others. Finally, the Plaintiffs argue that the CPA firm that audits Downey, along with Downey's law firm–must have known that Downey was substantially engaged in the business of selling the goods of others. *Id*. at 20.

---

[6] Attached to the Plaintiffs' response are affidavits from representatives of the Plaintiffs themselves stating that they each knew Downey was substantially engaged in selling the goods of others. In their response brief, however, Plaintiffs do not cite the affidavits for that proposition. Rather, they rely on the affidavits only as evidence of jewelry industry practice. *See* Plaintiffs' *Brief in Opposition to Defendant Downey Creations, LLC's Motion for Partial Summary Judgment* at 17. In any event, Downey takes issue with those statements in its reply, arguing that these "generalized statements" are not supported by "concrete facts." *Reply Brief of Defendant Downey Creations, LLC in Support of Motion for Partial Summary Judgment* at 21-21.

The Court need not resolve that dispute. As explained below, even if the Court were to include the Plaintiffs as creditors that knew Downey was substantially engaged in selling the goods of others, there still is insufficient evidence that a majority of Downey's creditors had such knowledge.

The Court disagrees with many of the inferences upon which the Plaintiffs' arguments are based. Even if a given creditor knew–by virtue of its own transactions with Downey–that Downey was engaged in selling the goods of others, it does not necessarily follow that the creditor knew that Downey was *substantially* engaged in selling others' goods. The Plaintiffs' argument with respect to Regions fails for this same reason. The Plaintiffs' other argument–that several creditors within the jewelry business knew that Downey was substantially engaged in selling the goods of others and that Regions should be charged with such knowledge because of three financing statements that were already on file–is also specious. As already stated, evidence of general knowledge within an industry is insufficient.

That leaves a handful of creditors that presumably had actual knowledge of Downey's entire business. While the Court is willing to infer for summary judgment purposes that Downey's three insiders, along with the company's auditor and attorney, had actual knowledge that Downey was substantially engaged in selling the goods of others, these creditors are too few to support the Plaintiffs' argument that Article 9 does not apply to the Contested Transactions. Even if the Court includes all eight Plaintiffs, *see* n. 6, infra, together those 13 creditors do not form a majority.

As indicated above, under *Valley Media's* standard, the Plaintiffs must show that a majority of the 91 creditors listed on Downey's bankruptcy schedules[7] knew that Downey was substantially engaged in selling the goods of others. The Plaintiffs urge the Court to adopt a different standard–one that is based on the dollar amount of the creditors' claims, rather than the number of creditors. Plaintiffs' argument is simply not supported by the plain language of § 9-102(a)(20). *See Wicaco*, 49 B.R. at 344 ("Webster's Third New Dictionary defines generally as "on the whole" and

---

[7] The Court looked to Schedules D, E and F in arriving at this figure.

"as a rule" and substantial as "an important or material part."). Accordingly, the Court concludes that the Plaintiffs have failed to establish a genuine issue of material fact regarding whether Downey's creditors generally knew that Downey was substantially engaged in selling the goods of others.

## Conclusion

Based on the foregoing, the Court concludes that the Plaintiffs have failed to establish a genuine issue of material fact as to whether the Contested Transactions are "consignments" under § 9-102(a)(20). Thus, the Court grants Downey's summary judgment motion against those Plaintiffs whose security interests in the goods they delivered to Downey were not perfected. Because Disons Gems and SAI's security interest were perfected, Downey is not entitled to judgment against them.[8]

In granting Downey's summary judgment motion, the Court has struggled with whether to go so far as to avoid the Plaintiffs' unperfected security interests pursuant to 11 U.S.C. § 544(a)(1), as it is not clear to the Court whether Downey has sought such relief. Downey did not formally assert its § 544(a)(1) strong arm powers by way of a counterclaim, affirmative defense or separate adversary proceeding. Rather, it merely argued on summary judgment that "by virtue of its status as debtor in possession, [it] obtained the rights and powers of a hypothetical lien creditor under 11 U.S.C. § 544(a)(1)." *Brief of Defendant Downey Creations, LLC in Support of Motion for Partial Summary Judgment* at 28.

Under Article 9, a consignment, as that term is defined by § 9-102(a)(20), is a security

---

[8] The undisputed facts indicate that neither Disons Gems nor SAI sent notification to Regions as required under § 9-324 of Revised Article 9. Thus, their liens on the goods appear to be subordinate to Regions' blanket lien. However, Regions is not a party to this summary judgment motion and the Court, therefore, stops short of issuing a judgment in favor of Regions with respect to Disons Gems and SAI. By the same token, it stops short of issuing judgment in favor of Disons Gems and SAI with respect to Regions as well.

interest *only* for the purpose of protecting the consignee's creditors. It does not otherwise alter the contractual relationship between the consignor and consignee. *See Valley Media*, 279 B.R. at 133. Thus, Article 9 is relevant in the Plaintiffs' dispute with Downey only if Downey is sitting in the shoes of a hypothetical lien creditor. In other words, but for Downey's strong arm powers under § 544(a)(1), Article 9 provides Downey no defense to the Plaintiffs' claim for replevin.

And therein lies the Court's dilemma. Pursuant to 11 U.S.C. § 546(a), the Code arguably contemplates that a claim for relief under § 544 must be brought by some sort of affirmative "action or proceeding" and that such "action or proceeding" must be commenced within a certain time frame–in this case within 2 years of the entry of the order for relief. As indicated above, Downey's first reference to § 544(a)(1) is on page 28 of its summary judgment brief. In the Court's opinion, this is arguably not "the action or proceeding" that § 546 contemplates. For this reason, the Court did consider denying Downey's motion for summary judgment.

Ultimately, however, the Court thought better of such an approach. For one thing, the Plaintiffs, themselves, have not taken issue with the manner in which Downey asserted its strong arm powers. More importantly, forcing Downey to essentially start over by filing a separate action or a counterclaim under § 544(a)(1) would be an inefficient use of judicial resources and would do nothing but increase the estate's administrative expenses to the detriment of Downey's creditors, including the Plaintiffs.

Thus, in the interest of judicial economy, the Court finds that Downey is entitled to avoid the Plaintiffs' security interests–to the extent such interests are unperfected–under 11 U.S.C. § 544(a)(1). A judgment order consistent with this opinion will be entered contemporaneously herewith.

###

Distribution:

Christopher Voltz
Paul T. Deignan
UST
Jon B. Abels
David E. Kress
Dennis J. Lewis
Andrew T. Kight